## State v. Dever
### Case C-880712
### Hamilton County, (1st)
### Decided January 31, 1990
[Cite as 1 AOA 8]

*Arthur M. Ney, Prosecuting Attorney, Leonard Kirschner, Esq., Christian J. Schaefer, Esq., and James E. Butler, Esq., 420 Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee,*

*Yaros & Yaros and G. David Yaros, Esq., 615 East Seventh Street, Cincinnati, Ohio 45202, for Defendant-Appellant.*

**HILDEBRANDT, J.**

Defendant-appellant Frederick Dever, Jr., appeals from the judgement of the Hamilton County Court of Common Pleas in which he was found by intervention of a jury to be guilty of rape.[1] For the reasons that follow, we affirm the trial court's judgement.

On February 21, 1987, the appellant resided with his wife and adopted daughter, Kristen, on the first floor of a two-family residence located in the village of Mariemont, Ohio. Diane Potter resided on the second floor of the building. At approximately 10:00 p.m., Potter was in her bathroom preparing to shower when she heard the appellant and Kristen talking.[2] At trial, Potter testified as follows:

> I heard Kristen crying and I heard [appellant] saying come on, come on, it will only take a minute and Kristen kept saying no, Daddy, I'm sleeping and he kept saying come on, come on, Kristen, come on, it is only going to take a minute. She said no, Daddy, I'm sleeping and then finally she said o.k. and I guess -- I could hear them talking and it was mumbling and it seemed like it was getting closer but I wasn't really paying attention at that time because I figured, I didn't really know what he was getting her up for but I figured it was something she had to do.

> * * *

> And I heard -- anyway, I heard the voices getting louder and then I heard the toilet seat so I knew they were in the bathroom because that's where the toilet is.

> * * *

> Then I heard them talking, I heard [appellant] groaning, he groaned three times very loudly and that was what made me really start listening. I didn't turn on the water, I just listened and I heard him to tell Kristen to count to 600 and I heard her counting and then he said oh, that feels so good and she said oh, does that feel good, Daddy, and he said yes, and he told her to keep counting and she stopped and she said come on, just count to 20, just count to 20, and she said no, I don't want to. I could hear mumbling and then I heard her say, oh, daddy, you got it all over my hand he said yes, I got it all over you, didn't I, and then I just left the house and went next door and called the police.[3]

Potter reported the foregoing conversation to Specialist Mike Wilson of the Mariemont Police Department. Wilson concluded that Potter's accusations warranted an investigation. The following day, Wilson informed the appellant's wife of Potter's allegations, and arranged for the removal of the child from the appellant's control. The next day, February 23, Wilson arranged for the intervention of the sexual abuse team of the Hamilton County Department of Human Services ("HCDHS"). Wilson informed the HCDHS team that the appellant was the alleged perpetrator. With the aid of HCDHS, Kristen was examined by Ann Saluke, M.D., at Children's Hospital.

Although Dr. Saluke's physical examination neither confirmed nor disproved a history of sexual conduct, during the exam Kristen told the doctor that she had sexual contact with appellant.

Before the trial, the trial judge determined Kristen's competency to testify.[4] At the conclusion of the pretrial hearing, the court stated:

> All right, I have to conclude the rule says those children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined or relating them truly and there is no question that Kristen understands the truth and the difference between the truth and false statements and that she is a bright little girl. The problem is she just can't relate what happened in this instance two years ago, if it did occur, and for that reason I can't find her competent under [Evid. R.] 601 to testify as a witness under this test.

* * *

At trial, Dr. Saluke was permitted to testify, over the appellant's objection, concerning Kristen's statements to her, as follows:

> Kristen told us that her father put his pee pee in her mouth and there was some white stuff that had a yucky taste and also that he put his hands on her pee pee and his pee pee on her pee pee and she identified her genital area as the pee pee.

At the conclusion of the evidence, the jury returned the verdicts described above and the appellant was sentenced as it appears of record. Appellant now urges on appeal that the trial court erred by allowing Dr. Saluke to testify concerning what Kristen had told her about the crime *sub judice*. We are unpersuaded.

The Supreme Court of Ohio recently ruled on the use of a child's statement of identification made to an examining physician, under circumstances similar to the case before us, in *State v. Boston*, the abused girl awakened screaming during the night following a period of visitation with her estranged father. The child told her mother, "* * * Daddy put something up my bucket [vaginal]." *Id.*, at 108, 545 N.E.2d at ____. The mother then observed redness in the vicinity of the child's genitals.

The following day the child was examined by a pediatrician, but the child refused to permit the doctor to touch her. The doctor's visual examination of the child's vaginal and anal areas yielded nothing of note.

An internal physical examination of the child was not made until approximately one month later, during which time the father continued to visit her. Upon internal examination, the doctor made findings that were consistent with sexual conduct.[5] During the examination, the child told the doctor that the father was the perpetrator.

The child was also examined by a psychologist who observed the child "* * * play with [anatomically correct] dolls in a sexually precocious manner, [heard] the child use slang terms for genitalia, and noted signs of autonomic hyperactivity -- typical of victims of child sex abuse." *Id.*, at 120, 545 N.E.2d at ____ (footnote omitted).

At Boston's trial, the mother and the two experts (the pediatrician and the psychologist) were permitted to testify about what the child told them concerning the identity of the perpetrator. The experts were further permitted to opine that the child's statements to them were truthful.

During the pretrial hearing to determine the three-year-old child's competency to testify, the child answered initial questions, sometimes by a nod of the head. She denied having been hurt and she made it clear that she did not want to talk to the judge. The court found the child incompetent to testify. During the trial, the court further explained its ruling:

> The child seems frightened, and considering the age of the child, considering the general fact of this particular case the

its incompetency or fact that the child was not allowed not to be called on that and not on the ability of the child to understand its obligation to tell the truth and its ability to communicate.

*Id.,* at 114, (Emphasis omitted).

In *Boston,* the Supreme Court of Ohio interpreted the trial court's ruling as having found the child to be unavailable as contemplated by Evid. R. 804(A) rather than incompetent to testify as prescribed by Evid. R. 601. The court explained:

Thus, the trial judge really found (the victim) unavailable as a witness rather than incompetent to be a witness. We recognize that appellant contends (admittedly with some efficacy) that such a finding is not supported by the record. However, the determination of competency (and availability) is within the sole discretion of the trial and absent a showing of an abuse of discretion, such a determination will not be disturbed by a reviewing court. We find no abuse of discretion here.

*Id.,* at 115, (Emphasis omitted).

In *Boston,* the Supreme Court of Ohio reversed the father's conviction of gross sexual imposition because the trial court denied him a fair trial by permitting the experts to testify that, in their opinion, the child told them the truth when she identified the father as the perpetrator. *Id.,* at 128-29, 545 N.E.2d at ____. The Supreme Court also determined that the use of expert testimony in child abuse cases is proper, *id.* at 120, 545 N.E.2d at ____, and set down guidelines for the use of such expert testimony. Among those guidelines, the court directed:

(F) When a child declarant is unavailable and does not testify either at a hearing or trial and no exception to the hearsay rule is applicable and when "indicia of reliability" are absent, to satisfy the requirements of the Confrontation Clause the out-of-court statements must have a particularized guarantee of trustworthiness." To show that there is a "guarantee of trustworthiness," the proponent of a child's out-of-court

statements must prove that a good-faith effort has been made to produce the child as a witness, there must be specific evidence of abuse, either physical or emotional, and there must be no apparent motive to falsify the out-of-court statements.

*Id.,* at 127, 545 N.E.2d at ____ (Emphasis omitted). The court then held:

* * * [A] out-of-court statement of an allegedly abused child of a tender years, including identification of a perpetrator, made to a qualified expert in child abuse, is admissible if the expert has independent evidence of physical or emotional abuse of the child, the child has no apparent motive for fabricating the statement and the child has been found unavailable after a good-faith effort to produce the child in court.

In the cause *sub judice,* as in *Boston,* the trial court precluded the victim from testifying because she could not remember the events constituting the alleged crimes. In both cases, the trial courts concluded that the child could comprehend the difference between truthful and false statements and relate facts truly. See Evid. R. 601. Regardless of the trial judge's statements in this case concerning Kristen's competency to testify, we believe that Kristen, whom the state attempted to quality as a witness, was *unavailable* under the Supreme Court's reasoning in *Boston,* and pursuant to Evid. R. 804. The rule states in pertinent part:

(A) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant:

(3) testifies to a lack of memory of the subject matter of this statement.

See *supra* at 6-7. We therefore hold that the element of unavailability, under the Supreme Court's *Boston* guidelines concerning the admissibility of a sexually abused child's out-of-court statement to an expert,[6] has been satisfied. See *supra* at 8.

Further, we find no evidence from which the trial court could have concluded that Kristen was fabricating the events set forth in her statement to Dr. Saluke. Rather, we find there was a guarantee of trustworthiness in the

child's statement because the events concerning the crime related by Kristen would ordinarily have been far afield from the knowledge of a three-and-one-half- year-old child.

The fact that Dr. Saluke did not find evidence of physical or emotional abuse differentiates this case from *Boston*. However, we place great significance upon what Ms. Potter heard. Specialist Wilson, the investigating officer, made certain that he related, in great deal, the events leading up to Dr. Saluke's examination of Kristen to the HCDHS sexual abuse team. See t.p. 54-55. Furthermore, Dr. Saluke acknowledged at trial that she was aware the appellant was the alleged perpetrator prior to Kristen's out-of-court statement to her. See t.p. 215.

We, therefore, hold that, under the facts of this case, Kristen's out-of-court statement was admissible during the proceedings below. Accordingly, we overrule the appellant's solitary assignment of error and affirm the trial court's judgment.

KLUSMEIER, P.J., and UTZ, J., CONCUR.

---

[1] The appellant had been charged with rape, R.C. 2907.02, andgross sexual imposition, R.C. 2907.05. The jury returned guilty verdicts as to each count. The trial court, finding that the charges were of similar import, imposed a sentence on the rape count only.

[2] Appellant's wife was at work at the time of the event sub judice.

[3] Potter explained that she could hear and understand the foregoing exchange through a heating duct that was common to both bathrooms. See, also, State's Exhibit 1.

[4] Kristen was three and one-half years of age at the time of the alleged offenses and five and one-half year of age of the time of the proceedings below.

[5] At trial, the pediatrician testified that the child suffered probable vaginal penetration and possible anal penetration. She further stated that "probable" meant 95-99 percent certainty while "possible" meant greater than fifty percent certainty.

[6] The expertise of Dr. Saluke, who had administered to approximately two hundred fifty child-abuse victims, was not challenged below.